IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

THERESA CHAVEZ AND NATALIE CHAVEZ,

     Plaintiffs,

v.

MCDONALD'S CORPORATION, ULTRA MAC CORPORATION d/b/a MCDONALD'S AND MARILI JUAREZ-BATISTA,

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs Theresa Chavez and Natalie Chavez, by and through their undersigned counsel, Jennifer Robinson, Esq., hereby submit the following Complaint and Jury Demand against Defendants and allege as follows:

**INTRODUCTION**

Cabrona, puta, mierda, pinche.  Bitch, slut, whore, shit, fucking bitch.  When Plaintiff Theresa Chavez and her daughter Natalie Chavez stopped by the McDonald's restaurant located at 5100 S. Broadway in Englewood, Colorado neither expected that their request for french fries with no salt would trigger a chain of events causing the manager of the McDonald's restaurant, Defendant Marili Juarez-Batista ("Juarez-Batista"), to hurl these and other derogatory, offensive and inflammatory comments at them.  Such additional comments included whether they could read and speak English and calling them stupid, making it clear that they were being targeted

1

because they were Hispanic.  Nor did they expect the McDonald's manager to physically assault Plaintiff Theresa Chavez causing a laceration to her breast that required medical attention then evict them both from the restaurant in full view of other McDonald's customers.  The police were called and ultimately issued Juarez-Batista a citation for disorderly conduct to which she later pled guilty.

We are filing this lawsuit seeking compensatory and punitive damages, attorneys' fees and costs against Defendants because Defendants denied Theresa and Natalie Chavez the benefits and privileges to make and enforce contracts because of their race.  As well, they were prevented from the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the McDonald's restaurant.

## JURISDICTION AND VENUE

1. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States. This is a civil action for damages, attorneys' fees and costs, for the violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000a providing equal access and enjoyment to facilities of public accommodation without regard to race and the benefits and privileges to make and enforce contracts without regard to race.

2. This Court has supplemental jurisdiction to consider state causes of action under 28 U.S.C.A. §1367, the ancillary state claims which "form part of the same case or controversy."

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the practices herein that are alleged to be unlawful were committed within the jurisdiction of the

2

United States Court for the District of Colorado.

## THE PARTIES

4.      Plaintiffs Theresa Chavez and Natalie Chavez are citizens of the United States and at all times relevant to the allegations in the Complaint were residents of the State of Colorado.

5.      Upon information and belief, Defendant McDonald's Corporation is a Delaware corporation with its principal office located in Oak Brook Illinois.

6.      Upon information and belief, Defendant McDonald's Corporation does business in Colorado and operates or significantly controls several McDonald's restaurants in Colorado including the McDonald's restaurant located at 5100 S. Broadway in Englewood, Colorado.

7.      Upon information and belief, Defendant McDonald's Corporation has the right to control the manner or method in which McDonald's restaurants are operated, including the day-to-day business operations.

8.      Upon information and belief, Defendant Ultra Mac Corporation, d/b/a McDonald's (hereinafter "Ultra Mac"), is a Colorado Corporation doing business in Colorado.

9.      Upon information and belief, Ultra Mac was established in 1979 and operates various McDonald's restaurants in Colorado including the McDonald's restaurant located at 5100 S. Broadway in Englewood, Colorado.  Ultra Mac's annual revenue currently exceeds eight million dollars.

10.     Upon information and belief, Ultra Mac is a franchisee of McDonald's Corporation.

11.     McDonald's restaurants are places of public accommodations principally

3

engaged in selling food for consumption on the premises and affecting commerce by serving or offering to serve food to interstate travelers.

12.     Upon information and belief, Defendant Marili Juarez-Batista is resident of the State of Colorado.   At all times relevant to this Complaint and Jury Demand Ms. Juarez-Batista was the manager of the McDonald's restaurant location at 5100 S. Broadway in Englewood, Colorado.

## FACTUAL ALLEGATIONS

13.     Theresa Chavez and Natalie Chavez are mother and daughter.

14.     On Thursday, April 26, 2018 Theresa Chavez and her daughter, Natalie Chavez, decided to stop at the McDonald's restaurant located at 5100 S. Broadway in Englewood, Colorado to purchase a meal.

15.     The Chavezs had frequented McDonald's in the past and were led to believe that McDonald's Corporation exercised control and authority of all of its restaurants and by entering one of its restaurants they were dealing directly with McDonald's Corporation.

16.     In all respects, the McDonald's restaurants that the Chavezs had frequented were operated in such a way that they created the appearance that McDonald's corporation owned and controlled its restaurants.

17.     When the Chavezs entered a McDonald's restaurant they relied on this representation in expecting to be given the same benefits and privileges as any other member of the public that was not a member of their protected class.

18.     Because Natalie Chavez has hypertension and has to limit her salt intake, she decided to go inside the restaurant rather than go through the drive through in order to make a

special request order for fries with no added salt.

19.    Upon entering the restaurant Natalie Chavez placed her order for french fries with no added salt.  Theresa Chavez initially waited in the car.

20.    The clerk at the register accepted Natalie's payment and agreed to provide the meal and french fries as requested.

21.    As Natalie was waiting for her meal she observed an employee, later identified as the restaurant manager, Juarez-Batista, add additional salt to the batch of french fries that had just been fried then scoop out a serving and put the serving into a bag.

22.    Juarez-Batista then approached Natalie Chavez and gave her the bag with the serving of the french fries with the added salt.

23.    Natalie Chavez then politely asked Juarez-Batista if there was any way she could have fries with no added salt.

24.    At that point Juarez-Batista began arguing with Natalie about the french fries and refused to give her fries with no added salt.

25.    Natalie Chavez replied that the added salt was visible on the french fries and stated that she was going to take a picture of the fries with the added salt and then asked Juarez-Batista for her name.

26.    At that point Juarez-Batista pointed to a sign in the restaurant and told Natalie Chavez that she could not take pictures inside the restaurant and asked her (Natalie Chavez was 35 years old at the time of the incident) if she knew how to read.

27.    Juarez-Batista then began to berate Natalie Chavez in a very loud and angry voice, asking her if she was stupid and dumb and whether she spoke English.

28.    Natalie Chavez, who has a dark complexion and is of Hispanic descent, responded that she was born and raised in America and she knew how to speak and read English.

29.    Juarez-Batista then proceeded to cuss at Natalie in Spanish in a very loud voice, calling Natalie a fucking bitch, slut and a whore ("cabrona" "puta" "mierda" "pinche").

30.    Other restaurant employees could be seen laughing in the background.

31.    At about that point Theresa Chavez entered the restaurant to see what was taking so long.

32.    When Theresa Chavez entered the restaurant she heard Juarez-Batista yelling at her daughter in a very angry and confrontational manner.  She asked what the problem was and attempted to diffuse the situation and told her daughter that she would handle it.

33.    Theresa Chavez then took the bag of food from her daughter and began looking into the bag and comparing its contents with the receipt and began to explain to Juarez-Batista that Natalie was merely asking to be given her order of fries before any additional salt was added because of her dietary concerns.

34.    Juarez-Batista continued her tirade, now calling both Chavezs stupid and dumb and accusing them of not knowing how to read or speak English.

35.    Juarez-Batista then continued to cuss at them in Spanish calling them "fucking bitch" and "whore" and "stupid American".

36.    Juarez-Batista then approached Theresa Chavez, who still had the bag of food in her hands, and in a very aggressive manner, lunged at her and grabbed the bag.

37.    In doing so, Juarez-Batista's punctured Theresa Chavez's chest leaving a long

laceration above her breast.

38.   The laceration caused Theresa Chavez to bleed.

39.   Juarez-Batista's actions were so violent that she ripped the bag and threw it into the garbage can with all of the food inside.

40.   Juarez-Batista then told the Chavezs to get out of the restaurant.

41.    Other customers in the restaurant observed the altercation.

42.   Juarez-Batista then told the Chavezs that she was calling the police.

43.   Theresa Chavez replied, "go ahead and call the cops, I'm going to call them too."

44.   Juarez-Batista's actions were so incendiary that one customer in the store yelled "go back to Mexico."

45.   All of this was very upsetting to both Chavezs causing them to be in fear for their safety.

46.   At that point they went outside the restaurant to wait for the police to arrive.

47.   While waiting, one of the restaurant employees approached Theresa Chavez and told her that this had not been the first time something like this had happened with Juarez-Batista at the McDonald's.

48.   Another customer told her that she had witnessed the altercation and expressly volunteered to remain at the scene until the police arrived in order to give a statement in support of the Chavezs.

49.   When the police arrived they took written statements from at least three customers who had witnessed Juarez-Batista's actions.

50.   All of the statements corroborated the Chavez's version of events.

51.    Accordingly, the police issued Juarez-Batista a citation for disorderly conduct.

52.    The police also asked Juarez-Batista if the food had been paid for and Juarez-Batista confirmed that it had.

53.    The police then told Juarez-Batista that she had to refund the money that Natalie had paid.

54.    The police also told Theresa Chavez that she should seek medical attention for the laceration caused by Juarez-Batista.

55.    Juarez-Batista subsequently pleaded guilty to the charge against her of disorderly conduct.

56.    Juarez-Batista was given a one-year deferred judgment.

57.    Natalie Chavez never got her french fries after Juarez-Batista demanded that she and her mother leave the restaurant.

58.    The Chavezs were denied the ability to make, perform, enforce, or modify a contract and denied the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship they had with McDonald's.

59.    Their race was a motivating factor in Defendants' actions.

## FIRST CLAIM FOR RELIEF

Discrimination in violation of 42 U.S.C. § 1981 against all Defendants.

60.    Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

61.    The Plaintiffs were subjected to racially discriminatory conduct in violation of their rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. § 1981.  They were

subjected to racially discriminatory conduct by the Defendants, individually and collectively, solely because of the Plaintiffs' race and color.

62.    On April 26, 2018, the Plaintiffs sought accommodations to conduct business with Defendants.   Plaintiff Natalie Chavez purchased food items from the McDonald's restaurant, making the intent to be treated equally and provided accommodations equal to those patrons who were not of Hispanic descent.

63.    As discussed more fully above, Defendants denied Plaintiffs full and equal enjoyment of its goods, services, facilities, privileges, advantages and accommodations due to their race and/or color.

64.    As a consequence of Defendants' wrongful actions and violation of federal laws, Plaintiffs were prevented from receiving equal accommodations as provided to patrons outside their protected class and were prevented from engaging in transactions and business on equal terms as others outside their protected class. Instead, they were verbally and physically assaulted.

65.    The Defendants violated Plaintiffs' right to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as are enjoyed by citizens outside their protected class.   Defendants committed racially discriminatory acts that deprived the Plaintiffs of their rights secured by the Constitution of the United States.

66.    Based on information and belief, customers outside Plaintiffs' protected class who request special orders are not refused, and/or verbally and physically assaulted with derogatory racial slurs, all done by management in plain sight of the viewing public.

67.    Each Defendants' conduct was a direct cause of Plaintiffs' injuries and damages, which are indivisible, resulting in joint and several liability.

68.    The constitutional rights of Plaintiffs that were violated by Defendants were clearly established at the time of the violation.

69.    The Defendants' unconstitutional conduct caused Plaintiffs' injuries and damages as set forth above in an amount to be proved at the time of trial.

**SECOND CLAIM FOR RELIEF**

Discrimination in violation of 42 U.S.C. § 2000a against all Defendants.

70.    Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

71.    Plaintiffs were subjected to racially discriminatory conduct in violation of their rights as guaranteed under 42 U.S.C. § 2000a, as previously described herein.

72.    On April 26, 2018, the Plaintiffs sought accommodations to conduct business with Defendants.   Plaintiff Natalie Chavez purchased food items from the McDonald's restaurant, making the intent to be treated equally and provided accommodations equal to those patrons who were not of Hispanic descent.

73.    As discussed more fully above, Defendants denied Plaintiffs full and equal enjoyment of its goods, services, facilities, privileges, advantages and accommodations due to their race and/or color.

74.    As a consequence of Defendants' wrongful actions and violation of federal laws, Plaintiffs were prevented from receiving equal accommodations as provided to patrons outside their protected class and were prevented from engaging in transactions and business on equal

10

terms as others outside their protected class. Instead, they were verbally and physically assaulted.

75.    Based on information and belief, customers outside Plaintiffs' protected class who request special orders are not refused, and/or verbally and physically assaulted with derogatory racial slurs, all done by management in plain sight of the viewing public.

76.    Each Defendants' conduct was a direct cause of Plaintiffs' injuries and damages, which are indivisible, resulting in joint and several liability.

77.    The constitutional rights of Plaintiffs that were violated by Defendants were clearly established at the time of the violation.

78.    The Defendants' unconstitutional conduct caused Plaintiffs' injuries and damages as set forth above in an amount to be proved at the time of trial.

### **THIRD CLAIM FOR RELIEF**

Exemplary damages pursuant to 42 U.S.C. § 1988 against all Defendants.

79.    Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

80.    The actions or omissions of Defendants, as aforesaid, were motivated by evil motive or intent, and/or involved a reckless or callous indifference to the federal protected rights of Plaintiffs.

81.    Plaintiffs are entitled to exemplary damages pursuant to 42 U.S.C. §§ 2000a and 1981 in an amount to be proved at the time of trial.

## FOURTH CLAIM FOR RELIEF

(Assault and Battery Pursuant to Colorado State Law against all Defendants)

82.     Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

83.     Defendants intended to cause offensive and harmful physical contact with Theresa Chavez.

84.     Defendants placed Plaintiffs in apprehension of immediate harmful physical contact, and caused unwanted physical contact that was offensive and harmful.

85.     Defendants' conduct was willful and wanton.

86.     Defendants' conduct caused Plaintiffs injuries and damages as set forth above in an amount to be proved at the time of trial.

## FIFTH CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress against all Defendants)

87.     Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

88.     Defendants' conduct in discriminating against the Plaintiffs based on their race, telling plaintiffs that they could not read or speak English, calling them dumb and stupid, using profane language towards them, telling them to get out of the restaurant and subjecting them to physical harm and all other conduct as described above consists of extreme and outrageous conduct, conduct which goes beyond all possible bounds of decency and is utterly intolerable in a civilized community, done intentionally or recklessly and which caused plaintiffs severe emotional distress, shame, fear, humiliation, stress, embarrassment and

distress.

89.     Defendants' conduct caused Plaintiffs injuries and damages as set forth above in an amount to be proved at the time of trial.

## SIXTH CLAIM FOR RELIEF

(Negligent Hiring, Training and Supervision against McDonald's Corporation and Ultra Mac)

90.     Plaintiffs incorporate by reference all paragraphs of this Complaint and Jury Demand as though fully set forth herein.

91.     Defendants McDonald's and Ultra Mac are liable for the actions of its agents and employees, as Defendants' business is conducted through them.   Liability is imputed to Defendants McDonald's Corporation and Ultra Mac for the actions of their agents and employees pursuant to the doctrine of respondent superior.

92.     Upon information and belief, Defendants were aware of prior and similar issues of the McDonald's manager but took no action to prevent further violations.

93.     Defendants negligently hired and/or failed to adequately train, supervise, and or discipline its employees and agents with regards to interactions with the public including Plaintiffs.  This negligent hiring and/or failure to properly train, supervise and/or discipline was the proximate cause, in whole or in part, of Plaintiffs' injuries, damages, and harm.

94.     Defendants' conduct caused Plaintiffs' injuries and damages as set fort above in an amount to be proved at the time of trial.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award them all relief as allowed by law, including, but not limited to:

a.      Actual economic damages established at trial;

b.      Compensatory damages, including, but not limited to, those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other non-pecuniary losses;

c.      Punitive damages for all claims as allowed by law in amount to be determined at trial;

d.      Pre-judgment and post-judgment interest at the highest lawful rate;

e.      Tax set-off;

f.      Attorneys' fees and costs; and

g.      Any other relief the Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES TRIABLE TO A JURY**

Dated this 18th day of January 2019.

_/s Jennifer Robinson_____
Jennifer Robinson, Esq., # 24764
7900 E. Union Ave., Suite 1100
Denver, CO  80237
Phone: (303) 872-9063
Fax:  (303) 766-9237
E-mail:  jrobinson@raemployment.com

Attorney for Plaintiffs

Copy sent to Plaintiffs.