IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00164-PAB-SKC

THERESA CHAVEZ and
NATALIE CHAVEZ,

    Plaintiffs,

v.

McDONALD'S CORPORATION,
McDONALD'S USA, LLC, and
ULTRA MAC CORPORATION d/b/a McDONALD'S,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendant McDonald's Corporation and defendant McDonald's USA's motions to dismiss [Dockets Nos. 21 and 24]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

## I. BACKGROUND[1]

On April 26, 2018, Theresa Chavez and her daughter, Natalie Chavez, went to the McDonald's restaurant located at 5100 S. Broadway Street in Englewood, Colorado. Docket No. 15 at 4, ¶ 16. This particular McDonald's is operated by Ultra Mac, a franchisee of defendant McDonald's USA. *Id.* at 3-4, ¶¶ 11-13. The restaurant looked like other McDonald's that plaintiffs had visited, and the employees were

---

[1]The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

dressed in typical McDonald's uniforms. *Id.* at 4-5, ¶¶ 18-23. On the day at issue, Natalie ordered french fries with "no added salt" because she suffers from hypertension and needs to limit her salt intake. *Id.* at 6, ¶¶ 30-31. The cashier told Natalie that her fries would be made as requested. *Id.*, ¶ 32.

However, while the fries were being prepared, Natalie noticed that an employee – later determined to be the manager, Ms. Juarez-Batista – added salt to the current batch of fries, and then served Natalie from that batch. *Id.*, ¶ 33. When Ms. Juaraz-Batista served Natalie the fries, Natalie asked if she could have fries without added salt. *Id.*, ¶¶ 34-35. Ms. Juarez-Batista "began arguing with Natalie . . . and refused to give her fries with no added salt." *Id.*, ¶ 36. Natalie said that the salt was visible and that she would take a picture of the fries, to which Ms. Juarez-Batista responded by "point[ing] to a sign . . . and t[elling] Natalie [] that she could not take pictures . . . and ask[ing] her . . . if she knew how to read." *Id.* at 7, ¶ 38. Ms. Juarez-Batista "then began to berate Natalie [] in a very loud and angry voice, asking her if she was stupid and dumb and whether she spoke [E]nglish." *Id.*, ¶ 39. Ms. Juarez-Batista then swore at "Natalie in Spanish in a very loud voice." *Id.*, ¶ 41.

Theresa Chavez entered the McDonald's "to see what was taking so long." *Id.*, ¶ 43. As she entered, "she heard [Ms.] Juarez-Batista yelling at her daughter," asked what was wrong, "and attempted to diffuse the situation." *Id.*, ¶ 44. Theresa told Ms. Juarez-Batista that Natalie was asking for fries without added salt because of Natalie's "dietary concerns." *Id.*, ¶ 45. "[Ms.] Juarez-Batista continued her tirade, now calling both Chavezs stupid and dumb and accusing them of not knowing how to read or speak

[E]nglish." *Id.*, ¶ 46. Ms. Juarez-Batista grabbed the bag of food and threw it in the trash. *Id.* at 8, ¶¶ 48, 51. In the process, she caused a laceration on Theresa's chest. *Id.*, ¶¶ 49-50. Eventually, the police were called. *Id.*, ¶¶ 54-55. The police required Ms. Juarez-Batista to refund to Natalie the cost of the order and also issued to Ms. Juarez-Batista a citation for disorderly conduct, to which she eventually pled guilty. *Id.* at 9, ¶¶ 63-65, 67.

After the altercation, Theresa called a customer complaint number she observed at the McDonald's where the incident occurred. *Id.* at 9-10, ¶ 72. That number connected her to the McDonald's Corporation. *Id.* There was no indication that Theresa had called the incorrect number or that McDonald's Corporation was "not involved in the day-to-day handling of customer complaints" from franchisees. *Id.* at 10, ¶ 73. Ultra Mac eventually responded to Theresa, stating: "McDonald[']s Corporation asked that we again respond to your complaint." *Id.*, ¶ 74.

Plaintiffs filed this lawsuit on January 18, 2019. Docket No. 1. They bring claims for race and color discrimination in violation of 42 U.S.C. § 1981 and exemplary damages pursuant to that section, as well as state laws claims of assault and battery, intentional infliction of emotional distress, and negligent hiring, training, and supervision. Docket No. 15 at 11-14, ¶¶ 79-104.

Defendants McDonald's Corporation and McDonald's USA (collectively, "defendants") filed motions to dismiss on April 5 and 8, 2019. Docket Nos. 21, 24. The motions are substantially identical. Defendants argue that they cannot be liable for Ms. Juarez-Batista's actions because there is no principal-agent relationship between them

3

and Ms. Juarez-Batista. *See* Docket Nos. 21, 24. Defendants additionally argue that plaintiffs have not alleged any facts to demonstrate that they "performed any act, much less an act motivated by evil or undertake with reckless or callous indifference to federally protected rights," to make them liable for exemplary damages. Docket No. 21 at 2; Docket No. 24 at 2-3.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations

and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," a plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

### A. § 1981

Plaintiffs allege that defendants are liable under § 1981 for the racially discriminatory actions of Ms. Juarez-Batista. Docket No. 15 at 11-12, ¶¶ 79-88. Defendants argue that plaintiffs have failed to allege facts demonstrating that Ms. Juaraez-Batista had any apparent or actual authority from McDonald's Corporation or McDonald's USA. Docket No. 21 at 6-9; Docket No. 24 at 6-9; Docket No. 31 at 2-6; Docket No. 32 at 2-6. Plaintiffs contend that, based on the uniform branding and marketing that they found at Ultra Mac, there are sufficient facts to allege apparent authority. Docket No. 29 at 3-10; Docket No. 30 at 3-10. As to actual authority, plaintiffs do not contest defendants' argument and, instead, argue that they should be permitted to seek discovery under Rule 56(d). Docket No. 29 at 11-13; Docket No. 30 at 11-13.

5

Before turning to the merits of defendants' motions to dismiss, the Court notes that it will not consider evidentiary material submitted by defendants. "[W]hen parties submit materials outside of the pleadings in support or opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them." *Dobson v. Anderson*, 319 F. App'x 698, 702 (10th Cir. 2008) (unpublished). Thus, the Court does not analyze the franchise agreement or the affidavit that defendants submitted. *See* Docket No. 21 at 5; Docket No. 24 at 5.

Although the parties focus on whether Ms. Juarez-Batista had actual or apparent authority from defendants, that focus is misplaced. In an action under § 1981, courts do not consider whether a particular employee had actual or apparent common law authority to act for a particular entity. Rather, the proper inquiry for a § 1981 claim is whether that entity is considered an "employer" of the employee and thus can be held liable for the actions of that employee. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("[A]n entity other than the actual employer may be considered a "joint employer" for purposes of § 1981."); *Jerome v. Hertz Corp.*, 15 F. Supp. 3d 1225, 1237 (M.D. Fla. 2014) (utilizing the joint employer test to determine whether Hertz should be liable under § 1981 for the actions of another entity's direct employee); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 751 (W.D. Tenn. 2012) (reasoning that common law vicarious liability tests do not apply when attempting to hold a party liable under § 1981).

However, even if defendants are employers of Ms. Juarez-Batista, that conclusion would not necessarily impute liability to defendants for Mr. Juarez-Batista's

actions. Although the Tenth Circuit has not addressed this issue, *see Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 n.4 (10th Cir. 2004), courts have held that an entity held to be an employer must actually participate in the allegedly discriminatory action to be liable under § 1981. *See, e.g.*, *Jerome*, 15 F. Supp. 3d at 1234 ("[A] plaintiff cannot bring a cause of action pursuant to Section 1981 against an individual not personally involved."). The Court agrees that plaintiffs must allege personal involvement of a defendant for the alleged discriminatory acts. Moreover, it is undisputed that defendants had no involvement in the altercation between plaintiffs and Ms. Juarez-Batista. As a result, defendants cannot be held liable under § 1981 for the actions of Ms. Juarez-Batista, and plaintiffs have failed to state a claim under § 1981.[2]

In the alternative, because the Tenth Circuit has not addressed the issue of whether employers under § 1981 must have personal involvement, the Court will analyze whether defendants are employers of Ms. Juarez-Batista. The Tenth Circuit utilizes three different tests for determining which entities may be considered an individual's employer: the hybrid test, the joint employer test, and the single employer test. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226-27 (10th Cir. 2014) (listing the three tests in the context of Title VII); *see also McCurry*, 942 F.3d 783 at 790 (applying the joint employer test for § 1981 claims); *Jerome*, 15 F. Supp. 3d at

---

[2] The Court also notes that § 1981 requires that a plaintiff "initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Plaintiffs have not alleged that there was any such contract between them and defendants. They only allege that Ultra Mac is an agent of defendants. Without the impairment of an existing contract or future contract between plaintiffs and defendants, § 1981 may not be applicable.

1237 (same); *Gray*, 874 F. Supp. 2d at 749 (same). Here, the joint employer test is the most appropriate because defendants and Ultra Mac are separate entities, a fact which the parties do not dispute. *See Knitter*, 758 F.3d at 1226-28 (applying the joint employer test when the plaintiff at issue is not an independent contractor and the potential employers are separate entities).

Two entities will be considered joint employers "if they share or co-determine those matters governing the essential terms and conditions of employment. Both entities are employers if they both exercise significant control over the same employees." *Id.* at 1226 (quotations and citations omitted). "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002); *see also Sandoval*, 388 F.3d at 1324 (noting that the ability to terminate is the most important factor in determining whether a party is a joint employer). Although the ability to terminate is the most important factor, the Court "may also consider whether [defendants] had control of [Ultra Mac's] records, including payroll, insurances, taxes and the like." *Knitter*, 758 F.3d at 1229 (citation and quotations omitted). Finally, the Court can also consider whether defendants had any control over "day-to-day supervision of employees, including employee discipline." *Id.* (citation and quotation omitted).

First, the Court addresses the most important factor, the right to terminate. Plaintiffs make two allegations that, broadly construed, could bear on this factor. First, plaintiffs claim that McDonald's Corporation and McDonald's USA "operate[] or

8

significantly control[]" the Ultra Mac McDonald's at issue. Docket No. 15 at 3, ¶¶ 6, 9. Second, plaintiffs claim that McDonald's Corporation and McDonald's USA have the "right to control the manner or method in which McDonald's restaurants are operated, including the day-to-day business operations." *Id.*, ¶¶ 7, 10. The Court finds that these allegations are conclusory. Plaintiffs allege that both McDonald's Corporation and McDonald's USA control and operate the Ultra Mac McDonald's, but offer no further details. As a result, the Court need not accept them. *Moffet*, 291 F.3d at 1232. However, even assuming that the Court did accept these allegations, they would be insufficient to "nudge [the] claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1190 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs have not alleged that McDonald's Corporation or McDonald's USA maintains the right to terminate Ultra Mac employees such as Ms. Juarez-Batista. Plaintiffs must allege more than that McDonald's Corporation or McDonald's USA controlled the Ultra Mac McDonald's "operations." Therefore, this factor weighs in favor of defendants.

Second, the Court looks to whether defendants "had control of [Ultra Mac's] records, including payroll, insurances, taxes and the like." *Knitter*, 758 F.3d at 1229 (citation and quotations omitted). Plaintiffs have not alleged that defendants maintain any control over Ultra Mac records, such as payroll, taxes, or insurance. As a result, this factor weighs in favor of defendants.

Finally, the Court analyzes whether defendants maintained any "day-to-day supervision of employees, including employee discipline." *Id.* (citation and quotation omitted). Plaintiffs have alleged that defendants exercised control over day-to-day

9

operations. Docket No. 15 at 10, ¶¶ 73, 75-76. This includes control over branding, greetings, and uniforms. *Id.* at 4-5, ¶¶ 18-23. As to control over day-to-day operations, the Court has already concluded that these allegations are conclusory. Additionally, uniformity in branding, greetings, and uniforms is insufficient to demonstrate that defendants were employers of Ms. Juarez-Batista. "[T]o hold a franchisor liable because of nationwide advertising and branding alone would result in virtually unlimited liability against franchisors for the conduct of franchisees." *McKinnon v. YUM! Brands, Inc.*, 2017 WL 3659166, at *9 (D. Idaho Aug. 24, 2017).

Plaintiffs implicitly allege that defendants have control over employee discipline through the complaint hotline. Docket No. 15 at 10, ¶ 74. However, the fielding of complaints is not enough to conclude that defendants were employers of Ms. Juaraez-Batista. *See Allen v. Greenville Hotel Partners, Inc.*, 2006 WL 1389812, at *2 (D.S.C. May 18, 2006) ("[F]orwarding complaints to the franchisees for resolution is merely a quality control measure.").

Assuming these allegations were sufficient to satisfy the third factor, the Court could still not conclude that defendants were joint employers of Ms. Juarez-Batista. This would be the only factor that weighs in favor of plaintiffs. The most important factor, right to terminate, weighs in favor of defendants. Control over records also weighs in favor of defendants. Minimal control over employee supervision and discipline does not outweigh these two factors.

Because plaintiffs have not stated a plausible claim under § 1981, the claim must be dismissed as to defendant McDonald's Corporation and defendant McDonald's

USA.  Furthermore, because plaintiffs have failed to state a claim under § 1981, their claim for punitive damages that derives from their § 1981 claim must also be dismissed.[3]

### B.  Remaining State Law Claims

Plaintiffs' remaining claims arise under state law.  *See* Docket No. 15 at 13-14. Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (alterations, citations, and quotations omitted).  This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits."  *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiffs do not argue that the Court should retain jurisdiction over their state law claims if their federal claims are dismissed, and the Court does not find any compelling reason to do so.  Accordingly, plaintiffs' third, fourth, and fifth claims for

---

[3] Plaintiffs' amended complaint asserts claims for "[e]xemplary damages pursuant to 42 U.S.C. § 1988."  Docket No. 15 at 12.  That section, however, does not deal with exemplary damages under § 1981.  Nevertheless, "[t]he availability of punitive damages under § 1981 is well established," *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1116 (10th Cir. 2001), and the Court construes plaintiffs' claim under § 1988 to be one for exemplary damages pursuant to § 1981.

relief will be dismissed without prejudice. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, the court "had discretion either to remand the claims to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

### IV. CONCLUSION

It is therefore

**ORDERED** that Defendant McDonald's USA's Motion to Dismiss [Docket No. 21] is **GRANTED**. It is further

**ORDERED** that Defendant McDonald's Corporation's Motion to Dismiss Amended Complaint [Docket No. 24] is **GRANTED**. It is further

**ORDERED** that plaintiffs' first and second claims for relief against defendant McDonald's USA are dismissed with prejudice. It is further

**ORDERED** that plaintiffs' first and second claims for relief against defendant McDonald's Corporation are dismissed with prejudice. It is further

**ORDERED** that plaintiffs' third, fourth, and fifth claims for relief against defendant McDonald's USA are dismissed without prejudice. It is further

**ORDERED** that plaintiffs' third, fourth, and fifth claims for relief against defendant McDonald's Corporation are dismissed without prejudice. It is further

**ORDERED** that defendant McDonald's USA is dismissed from this case. It is further

**ORDERED** that defendant McDonald's Corporation is dismissed from this case.

DATED March 20, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge